HERSEY, Judge.
This is an appeal from a summary final judgment of the probate division of the circuit court determining the beneficiaries of the estate of Annie J. Carlson. At issue in the lower court was the language of a joint and reciprocal will executed by decedent and her husband, Herbert Carlson. The judgment in effect holds that the will contains no general residuary clause. The assets of the estate therefore pass to decedent’s heirs at law under the statutes of descent and distribution because the major dispositive provisions were held to be activated only if the joint and reciprocal testators, Herbert and Annie Carlson, died simultaneously “or approximately so.”
A summary final judgment is proper only when the pleadings and evidence fail to raise a genuine issue of material fact. This conclusion is justified if either of two conditions are satisfied. If the court found that the language of the will is clear and unambiguous, the parole evidence rule would exclude extrinsic evidence as to the testators’ actual intent. The court would then have had to conclude that the clear and unambiguous language of the will shows that the testators intended that the major disposi-tive provisions of the will contained in paragraph FOURTH were to apply only in the event that the two testators died simultaneously. This possibility will be addressed subsequently. Alternatively, the court could have found that the will was ambiguous. In that case, the court would have considered other evidence of the testators’ intentions in reaching the conclusion that the testators intended the major dispositive provisions to apply only in the event of simultaneous deaths.
To determine which, if either, of these two conditions was satisfied we first examine the pertinent language of the joint and reciprocal will:
FOURTH: In the event that our deaths should occur simultaneously, or approximately so, or in the same common accident or calamity, or under any circumstances, causing doubt as to which of us survived the other, or survivor should not make a new Will, then, I, ANNIE J. CARLSON, hereby give, devise and bequeath my diamond ring to JANET LYNN HADGRAFT, to be hers absolutely. In the event of our simultaneous deaths, as hereinabove referred to, then, in that event, it is our express will and desire that the entire remaining assets of our estate be liquidated to cash, and we hereby give, devise and bequeath one-half (V2) of our estate to MARIE JOSEPHINE CARLSON, to be hers absolutely, and one-half (V2) of our estate to ALFRED HADGRAFT and VIOLET HADGRAFT, his wife, to be theirs absolutely.
FIFTH: In the event that MARIE JOSEPHINE CARLSON should predecease us, then, in that event we hereby give, devise and bequeath one-half (V2) of our remaining estate to DOROTHY GUN-NELL TROSCHER. In the event that both ALFRED HADGRAFT and VIOLET HADGRAFT should predecease us, then, in that event we hereby give, devise and bequeath one-half (V2) of our remain *1095 ing estate to WILLIAM DRYBURGH HADGRAFT.
On cursory reading, paragraph FOURTH appears to be merely a simultaneous death clause. Paragraph FIFTH ostensibly supplies alternative beneficiaries should the devisees named in paragraph FOURTH fail to survive the testators. The parties concede that the two signatories to the will did not die simultaneously.
If paragraph FOURTH was intended to be only a simultaneous death provision then the rather complete testamentary scheme represented by these dispositive provisions was intended to apply only if the testators died simultaneously. In the event of nonsi-multaneous deaths it must be supposed that the testators were content to have their property pass in whatever fashion the latest version of the descent and distribution laws of the state of Florida provide. The possibility that such an intention motivated these joint testators is very remote and strongly suggests that some other result was intended.
The fourth paragraph however contains the phrase “or survivor should not make a new Will ....” raising the possibility of construing that paragraph as a general residuary clause. Either that phrase modifies only the subsequent devise of the diamond ring or it is one of the alternative special conditions encompassed by the term “simultaneous deaths” and referred to in the following sentence by use of the term “simultaneous deaths, as hereinabove referred to.” If the latter interpretation is placed on this language, then the entire testamentary scheme is preserved. We think that the dual interpretations possible on the basis of the testamentary language and the legitimate concerns as to the intention of the testators preclude disposition of the issue by summary final judgment based upon the language of the will alone.
Having determined that the will is not clear and unambiguous on its face, we next consider whether the material facts properly before the trial court support a summary final judgment on some other basis.
Herbert and Annie Carlson executed the joint and reciprocal will in 1967. Herbert died on July 4, 1980. No probate proceedings were necessary in his estate because all significant assets owned by the Carlsons were held jointly. Annie died twelve days later, on July 16, 1980. The respective causes of death were natural and unrelated. It is conceivable that the phrase “In the event that our deaths should occur simultaneously, or approximately so” contemplated one death occurring so soon after the other that there was not a sufficient intervening period of time to permit the survivor to execute a new will. The intention of the testator on this point constitutes a genuine issue of material fact precluding summary final judgment.
The intended objects of the testators’ bounty constitute an additional issue for the finder of fact. The testamentary scheme embodied by paragraph FOURTH of the will results in one-half of the Carl-sons’ estate going to Herbert’s side of the family and one-half going to Annie’s side of the family. Intestacy, on the other hand, results in the entire estate going to Annie’s side of the family (simply because she survived Herbert) and even more extraordinarily, the estate descends to individuals not even named in the will. An affidavit given by a disinterested witness was properly filed in the trial court evidencing Annie’s intention that the will leave the estate in equal shares to the two sides of the family. Nothing was filed by appellees to contradict this affidavit. At the very least this creates a genuine issue of material fact foreclosing summary judgment.
The cases are legion which hold that where any doubt remains as to the existence of a genuine issue of material fact summary judgment is inappropriate. E.g., Snyder v. Cheezem Development Corp., 373 So.2d 719 (Fla.2d DCA 1979). See also Holl v. Talcott, 191 So.2d 40 (Fla.1966).
The summary final judgment is reversed and this cause is remanded with instructions that the trial court receive evidence in order to construe the will of the testator keeping in mind that “the polar star by *1096 which the court is guided is the intent of the testator .... ” In Re Estate of Parker, 110 So.2d 498, 501 (Fla. 1st DCA 1959).
REVERSED and REMANDED.
DOWNEY and ANSTEAD, JJ., concur.